Carl D. Crowell, OSB No. 982049
email: crowell@kite.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON
Eugene Division

| | |
|---|---|
| ELF-MAN, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>DOES 1 – 57,<br><br>   Defendants. | Case No.:  6:13-cv-00331<br><br>COMPLAINT<br><br>COPYRIGHT INFRINGEMENT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Elf-Man, LLC a limited liability company, ("Elf-Man" / "Plaintiff") complains and alleges as follows:

### INTRODUCTION

1. Plaintiff Elf-Man produced a novel family oriented comedy motion picture staring Jason Acuña as an Elf left by Santa to help a family come together and learn about Christmas.

2. In the production of a motion picture there are countless expenses and labors, many of which are not evident in the final project.  Such expenses and labors include writers, staff persons, construction workers and others who are often union based employees working for a median salary.

3. Indeed, the final product produced, which may be less than two hours long is often sourced from hundreds of days and tens of thousands of hours of labor, followed by near

countless hours of post-production until the final product is ready for viewing in a theatre or at home.

4.      The end product that many consumers see is a few hours in a theater, or possibly a DVD product that once production is complete has a nominal cost on a per-viewing experience. However this is misleading to the true costs of the motion picture as the costs to view a completed motion picture or produce a single DVD are nominal compared to what is often years of work by thousands of people leading up to the end product.

5.      Added to this is that the only people publicly seen related to the end product, movie stars and those that are known to be affiliated with motion pictures, such as directors and other persons of note, are all generally the highest compensated persons involved with the production of the work leading to the common misunderstanding that people involved in motion pictures are already wealthy.

6.      When the perception that those affiliated with a motion picture are already wealthy, and the end product, such as a DVD only costs very little to make, a reality disconnect often builds in the minds of much of the public, namely that those associated with a motion picture do not need any more money.

7.      When this reality disconnect meets with the ready availability of pirated copies of motion pictures and the ease at which they can be illegally copied and downloaded at an almost anonymous level, many people feel justified in their pirating or theft of motion pictures.

8.      The result is that despite the industry's efforts to capitalize on internet technology and reduce costs to end viewers through legitimate and legal means of online viewing such as through Netflix™, Hulu™, and Amazon Prime™, there are still those that use this technology to

steal motion pictures and undermine the efforts of creators through their illegal copying and distribution of motion pictures.

9. A common means of illegally copying and distributing content on the internet is through the use of a peer-to-peer network such as BitTorrent.

10. In this case each of the defendants has participated in illegally copying and distributing plaintiff's motion picture via BitTorrent.

## JURISDICTION AND VENUE

11. This is a suit for copyright infringement and contributory copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. ("The Copyright Act").

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a).

14. More particularly, venue is proper in this district as though the true identity of the defendants are unknown at this time, plaintiff has used geolocation technology to determine that, upon information and belief, each defendant conducted acts of copying plaintiff's work in this state, and more specifically in this district.

## PARTIES

### THE PLAINTIFF

15. Plaintiff Elf-Man, LLC is a limited liability company with principal offices in Frederick, Maryland that produced the motion picture at issue in this matter.

///

///

## The Rights of the Plaintiff

16. The motion picture in this case, titled Elf-Man, has been registered with the United States Copyright Office by the author, Elf-Man, LLC, Registration No. PA 1-823-286.

17. The motion picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

18. The motion picture is currently offered for sale in commerce.

19. Under the Copyright Act, Elf-Man, LLC is the proprietor of all right, title, and interest in the motion picture, including the right to sue for past infringement.

20. Under the Copyright Act, Elf-Man, LLC also controls the exclusive rights to reproduce the motion picture and to distribute the motion picture to the public.

21. Plaintiff's motion picture is easily discernible as a professional work as it was created using professional performers, directors, cinematographers, lighting technicians, set designers and editors and with professional-grade cameras, lighting and editing equipment.

22. Defendants have notice of plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and all packaging and copies, each of which bore a proper copyright notice.

## THE DEFENDANTS

### In General

23. Defendants are a group of BitTorrent users or peers whose computers are collectively interconnected and used for illegally copying and distributing plaintiff's motion picture.

24. The defendants, and each of them have illegally and without authorization from plaintiff copied, downloaded, shared and uploaded plaintiff's motion picture using the BitTorrent system.

25.     The defendants and each of them have been identified as infringing plaintiff's copyrights in this district.

### Further Identification of Defendants

26.     The defendants have been identified as Does in the instant case and are indicated in the attached Exhibit 1 by a specific internet protocol or IP address and a "hash" (a file identifier generated by an algorithm developed and implemented by the National Security Agency).

27.     Under the BitTorrent protocol each file has a unique "hash" tied to a specific file. In the instant case, all hashes identified on Exhibit 1 have been confirmed as being for an unauthorized copy of plaintiff's motion picture.

28.     Despite plaintiff's use of the best available investigative techniques, it is impossible for plaintiff to identify defendants by name at this time. Thus, the true names and capacities, whether individual, corporate, associate or otherwise of defendants are unknown to plaintiff, who therefore must sue defendants as Does 1 - 57.

29.     Each defendant can be specifically and uniquely identified by plaintiff through the Internet Protocol or IP address assigned to that defendant by his or her Internet Service Provider or ISP on the date and at the time at which the infringing activity was observed. In addition, plaintiff has, to a reasonable degree of scientific certainty, learned the ISP for each defendant, the torrent file copied and distributed by each defendant, the BitTorrent client application utilized by each defendant, and the location of each defendant, at least down to the state level, if not the county level at the time of infringement as determined by geolocation technology. All of this information is provided in Exhibit 1.

30.     Plaintiff believes that with a subpoena issued to the respective ISPs, the ISPs will have information which will lead to the identification of each of the Does true names and permit the

plaintiff to amend this complaint to state the same. Specifically, plaintiff intends to request expedited discovery for the sole purposes of issuing subpoenas to the ISPs that issued the IP addresses to defendants in order to learn the identity of the account holders for the IP addresses.

## JOINDER

31. Plaintiff acknowledges that joinder in this action under FRCP 20(a)(2) is permissive in that plaintiff's claims arise out of the same occurrences or transactions, or series of occurrences or transactions and that there are questions of law and fact common to each of the defendants.

32. All the defendants have collectively acted through BitTorrent to illegally download and distribute plaintiff's motion picture, each damaging plaintiff.

33. As such, the plaintiff's rights to relief, as stated below, ultimately arise out of the same series of transactions and occurrences.

34. This action also raises substantial questions of law and fact common to all defendants.

35. Permissive joinder in the instant case is to permit a more efficient management of the claims of plaintiff against the several defendants and to reduce the costs to plaintiff and defendants and to reduce the costs and burdens on the Court.

36. Notice is provided, that on being specifically identified and on request from an identified defendant, plaintiff agrees to sever any defendant that claims prejudice in being joined in this matter and to proceed against each such defendant individually.

## FACTS COMMON TO ALL CLAIMS

### IP Addresses

37. To connect to the internet, each defendant was required to contract with an Internet Service Provider, or ISP and create an account for service. It is the ISP that grants each user

access to the internet and the ability to send and receive information, whether in the form of an email, photo or motion picture.

38.     To identify the source and destination of any piece of information, an ISP assigns an Internet Protocol or IP address to each user which allows data to flow to and from each user of the internet.

39.     Each IP address is unique, and for any one time an IP address can be traced back to a specific ISP account holder and user.

40.     A standard term for any account for service from an ISP is that such service may not be used for illegal activity.

41.     Internet piracy and the use of the internet to conduct illegal activity are commonly known. As such both through the license granted to a user from their ISP to obtain an IP address and through common knowledge, defendants were on notice of the need to limit the use of their IP address to legal and authorized activity.

## BitTorrent

42.     Defendants, and each of them, utilized an interactive peer-to-peer file transfer technology protocol to copy plaintiff's motion picture.

43.     Peer-to-peer networks, at least in their most common form, are computer systems that enable internet users to: 1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers; and 3) transfer exact copies of files from one computer to another via the internet.

44.     The particular peer-to-peer protocol at issue in this suit is the BitTorrent protocol.

45. Defendants and each of them used BitTorrent in a collective and often interdependent manner via the internet in the unlawful reproduction and distribution of plaintiff's copyrighted motion picture.

46. To use BitTorrent, a user intentionally downloads a small program that they install on their computers — the BitTorrent "client" application. The BitTorrent client is the user's interface during the downloading/uploading process.

47. A BitTorrent client application typically lacks the ability to search for media or content files. To find media or content available for download (as made available by other BitTorrent users), users intentionally visit a "torrent site" using a standard web browser.

48. A torrent site is a website that contains an index of media or content being made available by other users (generally an extensive listing of movies and television programs, among other copyrighted content). The torrent site hosts and distributes small files known as "torrent files." Torrent files do not contain actual media or content. Torrent files are used to instruct a user's computer where to go and how to get the desired media or content. Torrent files interact with specific trackers, allowing the user to download the desired media or content.

49. The torrent file contains a unique hash identifier which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. This torrent file is tagged with the file's unique "hash," which acts as a "roadmap" to the IP addresses of other users who are sharing the media or content identified by the unique hash, as well as specifics about the media or content file.

50. A BitTorrent tracker manages the distribution of files, connecting uploaders (those who are distributing content) with downloaders (those who are copying the content). A tracker directs a BitTorrent user's computer to other users who have a particular file, and then facilitates the

download process from those users. When a BitTorrent user seeks to download a motion picture or other content, he or she merely clicks on the appropriate torrent file on a torrent site, and the torrent file instructs the client software how to connect to a tracker that will identify where the file is available and begin downloading it. In addition to a tracker, a user can manage file distribution through a Peer Exchange and/or a Distributed Hash Table.

51. A Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows users to share files more quickly and efficiently. Peer Exchange is responsible for helping users find more users that share the same media or content.

52. A Distributed Hash Table is a sort of world-wide telephone book, which uses each file's "hash" to locate sources for the requested media or content. Thus, users are able to access a partial list of other users with the media or content they want rather than being filtered through a central computer called a tracker. By allowing users to rely on individual computers for information, this not only reduces the load on the central tracker, but also means that every client that is sharing this media or content is also helping to hold this worldwide network together.

53. Files downloaded in this method are downloaded in hundreds of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same file. The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing media or content on a torrent network is also a source for others to download that media or content.

54. Thus, each IP address identified by the tracker is an uploading user who is running a BitTorrent client on his or her computer and who is offering the media or content for download. Once selected, the downloading user's BitTorrent client then begins downloading the media or

content by communicating with the BitTorrent client programs running on one or more uploading users' computers.

55. The effect of this distributed network of users all downloading and uploading the same file creates what is commonly known as a "swarm" wherein users operate collectively to copy and distribute media and content.

56. Members of the swarm become interconnected to download files, wherein the download creates an exact digital copy on the downloaders' computers. As additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file.

57. This distributed nature of BitTorrent leads to a rapid viral sharing of media and content throughout the collective peer users. As more peers join the collective swarm, the frequency and speed of successful downloads also increases.

58. Thus, a defendant's distribution of even a single unlawful copy of the motion picture can result in the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people. In this case, each defendant's copyright infringement built upon the prior infringements, in a continuing cascade of infringement going forward.

59. Further, though it is clearly established that numerous defendants participated in the exact same swarm, likely directly linking to each other, the nature of the BitTorrent system is such that the exact same data may be in multiple swarms at the same time. As such, while a single swarm more directly links defendants, the same data, plaintiff's motion picture, is being transferred in each swarm identified, making every identified defendant a participant in, if not the same

transaction or occurrence, the same series of transactions or occurrences – the BitTorrent exchange of plaintiff's motion picture.

## Conduct of Defendants

60.     Plaintiff has recorded each defendant identified herein as actually copying and publishing plaintiff's motion picture via BitTorrent, as plaintiff's investigator has downloaded the motion picture from each defendant identified herein.

61.     Defendants' conduct was illegal and in violation of their license and terms of access to the internet through their ISP.

62.     This case involves one or more swarms in which numerous defendants engaged in mass copyright infringement of plaintiff's motion picture.

63.     Each defendant illegally uploaded and shared plaintiff's motion picture within a swarm.

64.     Upon information and belief, each defendant was a willing and knowing participant in the swarm at issue and engaged in such participation for the purpose of infringing plaintiff's copyright.

65.     By participating in a swarm, each defendant participated in the exact same or nearly identical transaction, occurrence, or series of transactions or occurrences as the other defendants.

66.     Upon information and belief, many defendants also acted in concert with others, including other defendants by participating in a Peer Exchange.

67.     Upon information and belief, many defendants also acted in concert with other defendants and swarm members and by linking together globally through use of a Distributed Hash Table.

68.     Each defendant's conduct is effectively a collective enterprise constituting substantially similar or identical facts.

**Exemplar Defendant**

69.     For example, user Doe No. 7 of 57, known at this time only by the IP address of 71.193.128.17, and believed to reside in Salem, initiated his or her infringing conduct by first intentionally logging into the one of many BitTorrent client repositories known for their large index of copyrighted movies, television shows, software and adult videos. Doe No. 4 then intentionally obtained a torrent file identified by a "hash" or SHA1:33E6C4D563C276F29A7A48502C6640191DE3DD72 in this specific instance which is for plaintiff's motion picture from the index and intentionally loaded that torrent file into a computer program designed to read such files.

70.     With the torrent file intentionally loaded by Doe No. 7, his or her BitTorrent program used the BitTorrent protocol to initiate connections with hundreds of other users possessing and uploading or sharing copies of the digital media described in SHA1:33E6C4D563C276F29A7A48502C6640191DE3DD72, namely, plaintiff's motion picture, including with, upon information and belief, other identified Doe defendants.  As the motion picture was copied to Doe No. 7's computer piece by piece, these downloaded pieces of plaintiff's motion picture were then immediately available to all other defendants for those defendants' uses from Doe No. 7's computer.

71.     Each of Does 1 - 57 performed the same acts as those described for Doe No. 7, above. Each of these defendants also immediately became an uploader, meaning that each downloaded piece was immediately available to other users seeking to obtain the file without degradation in sound or picture quality.  It is in this way that each defendant copied and distributed the motion picture at the same time.  Thus, each participant in the BitTorrent swarm was an uploader or distributor and also a downloader or copier of plaintiff's motion picture.

## FIRST CLAIM FOR RELIEF

## COPYRIGHT INFRINGEMENT

72. Plaintiff repeats and realleges each of the allegations above.

73. Exhibit 1 identifies the Doe defendants known to plaintiff who have, without the permission or consent of plaintiff, distributed plaintiff's motion picture through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

74. Plaintiff alleges that each defendant, without the permission or consent of the plaintiff, has used, and continues to use, BitTorrent software to download plaintiff's motion picture, to distribute the motion picture to the public, including hundreds of other BitTorrent users, and/or to make the motion picture available for distribution to others.

75. Defendants' actions constitute infringement of plaintiff's exclusive rights under The Copyright Act.

76. Defendants' conduct has been willful, intentional, in disregard of and indifferent to plaintiff's rights.

77. As a direct and proximate result of defendants' conduct, plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

78. Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

79. The conduct of each defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiff great and irreparable injury.

80.    Pursuant to 17 U.S.C. §§ 502 and 503, plaintiff is entitled to injunctive relief prohibiting each defendant from further contributing to the infringement of plaintiff's copyrights and ordering that each defendant destroy all copies of plaintiff's motion picture made in violation of plaintiff's rights.

## SECOND CLAIM FOR RELIEF

## CONTRIBUTORY INFRINGEMENT

81.    Plaintiff repeats and realleges each of the allegations 1 - 71 above.

82.    Exhibit 1 identifies the Doe defendants known to plaintiff who have, without the permission or consent of plaintiff, contributed to the infringement of plaintiff's copyrights by other defendants and other swarm members.

83.    By participating in the BitTorrent swarm with other defendants, each defendant induced, caused or materially contributed to the infringement of plaintiff's exclusive rights under the Copyright Act by other defendants and other swarm members.

84.    Defendants' conduct has been willful, intentional, in disregard of and indifferent to plaintiff's rights.

85.    As a direct and proximate result of defendants' conduct, plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

86.    Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

87.    The conduct of each defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiff great and irreparable injury.

88.    Pursuant to 17 U.S.C. §§ 502 and 503, plaintiff is entitled to injunctive relief prohibiting each defendant from further contributing to the infringement of plaintiff's copyrights and

ordering that each defendant destroy all copies of plaintiff's motion picture made in violation of plaintiff's rights and take such further steps as are necessary to prevent further infringement.

## THIRD CLAIM FOR RELIEF

### Indirect Infringement of Copyright

89. Plaintiff repeats and realleges each of the allegations 1 - 71 above.

90. Defendants, and each of them, as identified by IP address in Exhibit 1, obtained internet access through an ISP and permitted, facilitated and promoted the use of the internet access identified with the specific IP address for the infringing of plaintiff's exclusive rights under The Copyright Act by others.

91. Defendants, and each of them, are liable as indirect or secondary infringers.

92. Defendants, and each of them, failed to secure, police and protect the use of their internet service against illegal conduct, including the downloading and sharing of plaintiff's motion picture by others.

93. Defendants' failure was with notice as illegal conduct is in violation of the law and in violation of the license for access granted to each defendant by their ISP which issued them an IP address to access the internet.

94. Defendants' conduct has been willful, intentional, in disregard of and indifferent to plaintiff's rights.

95. As a direct and proximate result of defendants' conduct, plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

96. Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

97.      The conduct of each defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiff great and irreparable injury.

98.      Pursuant to 17 U.S.C. §§ 502 and 503, plaintiff is entitled to injunctive relief prohibiting each defendant from further indirect infringement of plaintiff's copyrights and ordering that each defendant destroy all copies of plaintiff's motion picture made in violation of plaintiff's rights and take such further steps as are necessary to prevent further indirect infringement.

## DAMAGES

99.      Plaintiff has been damaged and claims damages of $30,000.00 from each defendant pursuant to 17 U.S.C. § 504(c)(1).

### Notice of Further Claims

100.      While the relief prayed for by plaintiff is specific and less than may be allowed by law, plaintiff hereby provides notice of the potential damages available under various laws, such as 17 U.S.C. § 504 which include:

    a.    Defendants' profits;

    b.    Plaintiff's full damages;

    c.    Statutory damages of up to $150,000 against each defendant should there be a finding of willful conduct;

    d.    All costs of this action; and

    e.    Broad equitable relief, including the destruction of all infringing articles and equipment used in the infringement;

101.      Plaintiff gives notice it may move to elect the full scope of relief available against each defendant as discovery proceeds.

///

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendants and each of them as follows:

A.  For entry of permanent injunctions enjoining each defendant from directly, contributorily or indirectly infringing plaintiff's rights in plaintiff's motion picture, including without limitation by using the internet to reproduce or copy plaintiff's motion picture, to distribute plaintiff's motion picture, or to make plaintiff's motion picture available for distribution to the public, except pursuant to a lawful license or with the express authority of plaintiff. And further directing defendants to destroy all unauthorized copies of plaintiff's motion picture.

B.  For $30,000.00 damages pursuant to 17 U.S.C. § 504.

C.  For plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505.

D.  For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

DATED: February 26, 2013.

        Respectfully submitted,

        CROWELL LAW

        /s/ Carl D. Crowell
        Carl D. Crowell, OSB No. 982049
        email: crowell@kite.com
        P.O. Box 923
        Salem, OR 97308
        (503) 581-1240
        Of attorneys for the plaintiff